Michael H. Gold
350 Fifth Avenue, Suite 6800
New York, New York
10118
Tel (212) 838-0699
Fax (212) 868 0013

                                     November 16, 2017

By ECF

The Honorable I. Leo Glasser
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re: United States v. Todd Macaluso, 16-609 (ILG)*

Dear Judge Glasser:

      I am writing pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure to respectfully request that the Court set aside the verdict of guilty on all counts and enter a judgment of acquittal or, in the alternative, order a new trial.

      In reviewing a Rule 29 and Rule 33 motion the Court must view the evidence in the light most favorable to the verdict, and must presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences. A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. *United States v. Campbell, 702 F.2d 262, 264 (D.C.Cir.1983) (citations omitted); see also United States v. Castro, 776 F.2d 1118, 1125 (3d Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); United States v. Dixon, 658 F.2d 181, 188 (3d Cir.1981).*

      Here, the defendant was convicted of conspiracy to fly 1500 kilograms of cocaine from Ecuador to Honduras. The Court properly charged the jury that the essence of a conspiracy is the agreement by and between the defendant and at least one other person to violate the law. In that regard, the government failed to establish with credible evidence beyond a reasonable doubt that the defendant was a knowing member of the conspiracy.

1

To prove the defendant's guilt in a narcotics conspiracy, it is incumbent upon the government to show his knowledge, awareness and knowing participation in its goal. *United States v. Torres, 604 F3d. 58, 66 (2d Cir. 2010)*. Failing to introduce sufficient evidence that a jury could infer the defendant's knowledge and intent to join and participate in the criminal scheme is grounds for reversal. *United States v Hassan, 578 F3d. 108, 123 (2d. Cir. 2008); see also United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008)*. Ordinarily, determining the credibility of witnesses falls within the purview of the jury and will not be disturbed by the courts. *United States v. Weinstein, 452 F.2d 704, 713-714 (2d Cir. 1971), cert. denied, 406 U.S. 917 (1972)*. However, that determination must be based upon rational evaluation and must be reversed if the underlying testimony is "so incredible that no reasonable juror could believe him." *United States v. Shulman, 624 F.2d. 384, 388 (2d. Cir. 1980); see also Lyda v. United States, 321 F.2d 788, 794-795 ( 9th Cir. 1963)*. In light of the wildly inconsistent and admittedly perjurious testimony of the star witness, the deference normally accorded a jury finding must be disregarded.

The central witness against Mr. Macaluso was Humberto Contreras who proved himself thoroughly incapable of belief. Having already pleaded guilty to perjury for filing a false affidavit pre-trial, he compounded that crime by falsely trying to explain his lie at trial. (Tr. 487-520). He repeatedly lied, lied about lying and lied about lying about lying. As the Court charged, when a witness is proven to have lied, the jury was free to disregard his testimony and here, the testimony was "so incredible that no reasonable juror could have believed him". Without Contreras's testimony, the evidence is merely innuendo and interpretation of parsed and coded words.

Mr. Vasquez, the other cooperating defendant, provided little independent information regarding the defendant. He only spoke Spanish and had limited interaction with Mr. Macaluso because of the language barrier. His source of information about Mr. Macaluso's supposed knowledge came from El Viejo and Mr. Contreras, one a self-described liar and the other convicted.

The only conceivable acknowledgement of a knowing and intentional involvement in a conspiracy lays in the 11/14/16 recorded conversation between the government informant, Contreras, Vasquez and the defendant. At the outset of the meeting, Mr. Contreras and Mr. Duffis acknowledge Mr. Macaluso's limited ability to speak Spanish. At trial, Mr. Contreras categorized his skills as "survival Spanish". (Tr. 362). While conversation revolved around his payment, of which he allegedly constantly complained, Mr. Macaluso says not a word. He only speaks at the end of the meeting of making 2 or 3 flights to transport 1500 kilograms. Despite the fact that this meeting was for the purpose of making the final arrangements for the flight, not once was the word cocaine or drugs even spoken. This was a coded meeting in Spanish in which

Mr. Vasquez is overheard twice translating the code uttered by Mr. Duffis. There is no explanation for why a meeting amongst knowing conspirators would be conducted in a code that not all conspirators are demonstrated to understand.

There was virtually no corroboration of the testimony of either Mr. Contreras or Mr. Vasquez. Despite detailed references to restaurant and hotel meetings, only one receipt was produced for an uncontested stay in Orlando. Nothing supported testimony of multiple incriminatory meetings in Mexico and elsewhere. Specifically, no customs documents, passports, phone records, credit card or other documentation supported the weak claims of the cooperators. Either such evidence was obtained and strategically not introduced, which is highly unlikely, the government failed to secure such elementary corroborative evidence or the information was obtained but failed to support the testimony, which would constitute undisclosed *Brady* material. We would certainly like confirmation of one of the above or some other explanation if one exists, particularly in the *Brady* context. In any event, the lack of corroboration for fatally discredited witnesses only heightens the failure of proof beyond a reasonable doubt.

Accordingly, we ask the Court to set aside and enter a verdict of not guilty. There was not enough proof from which a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt and the charge must be dismissed.

        Respectfully submitted,

        Michael H. Gold