UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,                          MEMORANDUM AND ORDER
                                                                  16-CR-609

      - against -

TODD MACALUSO,

                Defendant.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Pending before the Court are the Defendant's motions pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure seeking to set aside the verdict of guilty and enter a judgment of acquittal or, alternatively, to order a new trial. Defendant Todd Macaluso was found guilty after a trial by jury of conspiring with his co-defendants, Humberto Contreras and Carlos Vazquez, to possess with the intent to distribute five kilograms or more of cocaine on board an aircraft registered in the United States, in violation of 21 U.S.C. §§ 963, 960(b)(1)(B)(ii), and 959(d). While his co-defendants accepted plea agreements, the Defendant chose to take his case to trial. For the reasons stated below, the Defendant's motions are DENIED.

## RULE 29

      In seeking relief pursuant to Rule 29, the Defendant challenges the sufficiency of the evidence to support his conviction. That Rule advises the Court that it "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim P. 29. General principles have accreted overtime to that precisely stated Rule adding layers of meaning to homely words, such as "evidence" and "sufficient" and "sustain." So, for example, evidence, whether direct or circumstantial, must be assessed most favorably to the Government drawing every inference in its favor. United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983), abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259-60 (1994). A conviction must be affirmed if the jury could

have found guilt beyond a reasonable doubt from the inferences fairly and reasonably drawn. United States v. Skowronski, 968 F.2d 242, 247 (2d Cir. 1992). The determination of credibility is solely in the province of the jury and the Court must not usurp its role. United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999). The clearest and most instructive distillation of the many elaborations of the Rule was written by Judge Prettyman in Curley v. United States, 160 F.2d 229, 232-33 (D.C. Cir. 1947), cert. denied, 331 U.S. 837 (1947), as follows:

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

The defendant has the burden of persuading the Court that there was no evidence to permit a reasonable mind to fairly conclude that he was guilty beyond a reasonable doubt. United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993). Having presided over this trial and having reviewed the record, with which I am thoroughly familiar, I conclude with confidence that the Defendant failed to carry his burden and that the matter was necessarily left to the jury to decide. His Rule 29 motion is DENIED.

**RULE 33**

Rule 33 is exemplary in its succinctness: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim P. 33. Inherent in its succinctness, however, is the question, when does the interest of justice so require? The answers frequently given are "whether letting a guilty verdict stand would be a manifest injustice," United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001), and whether there is a "real concern that an innocent person may have been convicted." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005). With that gloss upon the Rule in mind, shall the conviction of the Defendant be vacated and a new trial be granted? The answer the Court is driven to make upon its view of the law is "No" for the reasons discussed below.

Here, the crux of the Defendant's argument is that the government failed to convict him upon "credible" evidence. The Defendant gives particular focus to the credibility of the government's so-called "central witness." Ultimately, "the defendant bears the burden of proving that this extraordinary remedy should be granted." United States v. Levy, 594 F. Supp. 2d 427, 436 (S.D.N.Y. 2009) (citing United States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995)). He has failed to carry that burden. Even assuming that this "central witness" was not credible, the Defendant ignores the litany of other highly credible evidence presented against him at trial.

Implicit in the Defendant's contention is the devaluation of circumstantial evidence. That view has been "devalued" by Wigmore quite convincingly who observed that "circumstantial evidence may be as persuasive and as compelling as testimonial evidence and sometimes more so . . . ." 1A Wigmore on Evidence § 26 at p. 961; see also Holland v. United States, 348 U.S. 121, 140 (1955) ( "Circumstantial evidence . . . is intrinsically no different from testimonial evidence . . . . In both instances a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.") In People v. Cleague, 22 N.Y.2d 363 (1968), the Court of Appeals, after citing Wigmore, *supra*, in observing that "the myth of innate superiority of direct testimonial evidence was exploded long ago" went on to write at p. 367: "Indeed, circumstantial evidence is generally stronger, at least when it depends, as it often does, upon undisputed facts about which human observers are less likely to err as a matter of accuracy or to distort as a matter of motivation, emotional shock, or external suggestion. On the other hand, direct evidence almost always, even in the instance of bystanders, is subject to one or more of those psychological infirmities." The law in this Circuit is the same. See United States v. Sureff, 15 F.3d 225, 229 (2d Cir. 1994); see also United States v. Yakovlev, No. 09 CR 587(S-1) (ILG), 2011 WL 13130434, at *12 (E.D.N.Y. July 28, 2011), aff'd, 508 F. App'x 34 (2d Cir. 2013). The circumstantial evidence in this case speaks volumes.

Evidence of the Defendant's knowing participation in this conspiracy starts with money—$185,000 to be exact. Dkt. 128-7, at 4. The Defendant was to be paid over a hundred times his normal rate for piloting an aircraft. The Defendant stipulated to the fact that he was typically paid $1,000 per flight from the U.S. to Mexico, and a flight to Haiti, in the same plane, is not plausibly 185 times as expensive unless some illicit cargo is involved. Dkt 128-10; Ex. G 3:43-9:26.

The Defendant also went to great lengths to keep his co-pilot in the dark about the conspiracy. This fact was corroborated by numerous sources throughout the trial. "Lefty"—the pilot seated to the left, aka Macaluso—was the one to talk to about transporting the cocaine. See Ex. B. 25:25-26; see also Ex. E 1:40-46; Ex. F 8:39; Trial Tr. 680:18-24; Ex. F 10:27-28.

The Defendant was present at numerous meetings with known drug traffickers. See Ex. G. Some of these meetings were recorded, and the Defendant's conversations displayed knowledge of the illicit purpose of the flights. See Ex. A; Ex. B. The Defendant repeatedly discussed how many "kilograms" his plane could carry. The Defendant also discussed making numerous trips along a known drug route for the Mexican cartel. Ex. G15:41-17:15. The Defendant even offered his property in Mexico as a place for the cartel to move "things." See Trial Tr. 362:17–365:4.

Based upon the evidence introduced at trial, it is clear that there is absolutely no "real concern that an innocent person may have been convicted." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005). As such, the Defendant's Rule 33 motion is DENIED.

## CONCLUSION

For the foregoing reasons, the Defendants motions pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure are DENIED.

SO ORDERED.

Dated: Brooklyn, New York
January 22, 2018

/s/
_____
I. Leo Glasser