UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA

                                         MEMORANDUM AND ORDER
        v.                                    16-CR-00609

TODD MACALUSO,

                      Defendant.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Pending before the Court is *pro se* petitioner Todd Macaluso's motion for relief under 28 U.S.C. § 2255.  DE 204.  He seeks to vacate his conviction alleging ineffective assistance by trial counsel, Michael Gold, who was assigned to represent him pursuant to the Criminal Justice Act, in that he failed to (1) interview or call exculpatory witnesses; (2) consult or call expert witnesses; (3) present an appropriate defense and comprehend relevant law; (4) suppress a November 14, 2016 undercover audio recording; (5) investigate a government witness's supposed alteration of an audio recording; (6) present a translated version of the November 14 recording; and (7) object to (a) the introduction of his codefendants' guilty pleas, (b) testimony concerning "code words" used in the conspiracy, (c) a variance between the charged conspiracy and "conspiracies" proven at trial, and (d) erroneous jury instructions.  Macaluso has since filed three additional motions, a supplemental motion to set aside his sentence, DE 210, a motion to strike the letter of Michael Gold dated July 11, 2019, DE 221, and a motion to strike the government's opposition to his petition, DE 227.  For the reasons that follow, Macaluso's motions are **DENIED**.

## BACKGROUND

Briefly, Macaluso and two others, Carlos Almonte Vasquez and Humberto Osuna Contreras, were indicted on December 1, 2016 for conspiring to possess with intent to distribute more than five kilograms of cocaine aboard an aircraft registered in the United States (the "Falcon 10"), in violation of 21 U.S.C. §§ 963, 960(b)(1)(B)(ii), and 959(d). DE 16. His codefendants pled guilty and cooperated with the government. Macaluso chose to go to trial.

The evidence of the defendant's guilt was overwhelming. It was presented during five days of trial, primarily through the testimony of three witnesses:

### Carlos Almonte Vasquez

A cooperating co-defendant who was the representative of Victor Pena, the broker between the cocaine supplier, Duffis, an undercover participant, and the supplier of the airplane that would transport 1,500 kilograms of cocaine from Ecuador to Honduras.

### Humberto Osuna Contreras

A cooperating co-defendant who represented a drug trafficker who worked with Pena to arrange for the transportation of the cocaine from Ecuador to Honduras. He testified to the events leading to the meeting with the defendant and his enlistment as the pilot of the plane by which the 1,500 kilograms of cocaine would be flown from Ecuador to Honduras.

### Alex Young Duffis

He was the government's confidential source who participated in the conspiracy posing as the supplier of the cocaine to be transported by the plane piloted by the defendant.

Recorded Conversations Between Duffis and Pena

These conversations reflected Pena's belief that Duffis was the Colombian source of the cocaine to be transported to Honduras from Ecuador and on which frequent references were heard of Pena's awareness of the defendant's knowing participation in the conspiracy.

Recorded Conversations Between Duffis and Vasquez

These conversations contained repeated references to the defendant's knowing participation in the conspiracy as did video and audio recordings of the defendant himself. These conversations, without more, would have sufficed to convince a jury of the defendant's guilt beyond a reasonable doubt.

The foregoing is intended to convey a brief profile of the principal characters, their roles in this international conspiracy which, had it succeeded, would have made 1,500 kilograms of cocaine available to its users in this country, its intended final destination. A detailed account of the evidence in each of those headings is to be found in the government's memorandum in opposition to the motion. DE 223.

After a five-day jury trial, Macaluso was convicted on November 3, 2017. DE 125. On June 7, 2018, he was sentenced to 180 months of imprisonment, 5 years of supervised release, fined $10,000, and a special assessment of $100. DE 152.

## DISCUSSION

### I.

His assertions of ineffective assistance are addressed hereafter, *seriatim*.

Upon receiving a claim of ineffective assistance, the Court routinely sends an invitation to the accused attorney to respond either by brief, affidavit or personal appearance in accordance

with *Sparman v. Edwards*, 154 F.3d 51 (2d Cir. 1998).  Mr Gold, trial counsel, accepted that invitation.

### Failure To Interview or Call Witnesses

In a letter dated July 11, 2019, DE 207, Mr. Gold reported as follows: "I spoke with Mr. Kattrain on several occasions seeking information and he was ambivalent, at best, in his ability and desire to assist.  Finally, he stopped taking my calls and I was contacted by his counsel who directed me not to attempt further communication with him again . . . . I also called and spoke with Mr. Ruben who was totally enraged at Mr. Macaluso, did not provide any exculpatory, trustworthy or consistent information and directly stated that he would do anything in his power to see Mr. Macaluso spend the rest of his life in jail.  Mr. Macaluso was completely and totally advised of my conversations with both Mr. Kattrain and Mr. Ruben."

In what he styled a "motion," the defendant requested the Court to "strike" Mr. Gold's letter for the reason that he did not state that he was writing it "under penalty of perjury" in accordance with 28 U.S.C. § 1746.  DE 221.  In a letter to Mr. Gold, DE 224, the Court resisted the temptation to question the applicability of § 1746 to his letter, but in the interest of prudence, requested him to make the statutory declaration in an addendum to it.  I note that in *Batista v. United States*, decided months later, the Court of Appeals wrote that: "Declarations are not defective merely because they do not contain the precise phrase" and "may 'substantially comply' with the statutory requirement without containing the exact language of Section 1746." 792 Fed. App'x 134, 135 (2d Cir. 2020) (citation omitted).

4

### Failure To Call Expert Witnesses

Macaluso claims that Mr. Gold's failure to consult an aviation expert was negligence. That assertion is unwarranted and false. In Mr. Gold's letter of July 11th, referenced above, he reported that he consulted an aviation expert to whom he was referred by Macaluso, even requesting CJA authorization to do so. That expert, a Mr. Manganaro, refused to testify on "professional and personal grounds and believed Mr. Macaluso guilty of the charges." DE 207.

Macaluso proffered the Declaration of Peter Leffe who, he asserts, would opine that the Falcon 10 was incapable of carrying 1,500 kilograms of cocaine, apparently forgetting that Macaluso himself stated that the plane could carry that weight and, if necessary, he would make multiple trips to carry that load. *See* DE 128-7 at 12:21-17:2.

### Failure To Call Audio Expert

Macaluso also asserts that Mr. Gold failed to consult an audio expert with the expectation that he would confirm Macaluso's contention that the recordings were manipulated. As regards this assertion too, Mr. Gold in his July 11th letter reported that he did confer with a Frank Piazza, an audio expert who reviewed the recordings and found no evidence of tampering.

Macaluso proffered a report of an audio expert who opines that a recording of a November 14th meeting with his co-defendants and the confidential source was "not a complete and continuous recording of any conversation" but of 2 segments of one or more conversations digitally edited together. The seeming anomaly was completely and persuasively explained in detail in the government's opposition to Macaluso's motion which dispels any suggestion of impropriety. DE 223 at 12-13.

## The Translation Fault

Macaluso faults Mr. Gold for not presenting at trial a translation of a November 14 recording by a translator, Carlos Venant, who was hired by him and which he claims differed from the transcript introduced by the government. Venant's translation, Macaluso contends, would have established that Macaluso's co-conspirators intended to "trick" him and steal his plane. A declaration of the translator, or a copy of the transcript, was not provided, making the credibility of his claim impossible to determine. In his letter, however, Mr. Gold writes that Macaluso "knew and ultimately agreed, the differences between [the translations] were not so great and in some instances the government's interpretation was more favorable" and they decided to accept the government's translation, stipulating to its accuracy. DE 207 at 2.

The other claims of counsel's ineffectiveness are sprinkled throughout the 13-page § 2255 motion and elaborated on in a 56-page Memorandum in support of that motion. They belabor his counsel's ineffectiveness for failing to object to the introduction of co-defendant guilty pleas; expert and lay testimony describing and explaining code words; indictment variance regarding multiple conspiracies and jury instructions asserted to be erroneous. Most, if not all of those claims speak to trial errors which have been examined and are meritless.

It is worth noting in that regard, that Macaluso filed a notice of appeal from his conviction and sentence, DE 176, and on the same day, filed a motion for an extension of time to file that notice which was 5 months late. DE 177. The government's objection to that motion made its denial mandatory and inflexible. DE 180. Macaluso then moved this Court to reconsider its rejection of the extension request. DE 181. The Court of Appeals stayed the appeal and directed Macaluso to advise of the status of the motion at 30-day intervals. DE 185.

Shortly thereafter, this Court denied Macaluso's motion for reconsideration. DE 187. Several months later, Macaluso requested a copy of the record of his appeal from the Circuit Court or that the Clerk of this Court prepare that record if it had not yet done so. DE 196. A notice to appeal the denial of his motion to reconsider was then filed with this Court. DE 209. The docket sheet reflects nothing thereafter regarding his appeals nor is there any entry on the docket sheet relating to the ultimate disposition of the Court of Appeals' stay.

## II.

The § 2255 petitioner bears the burden of proving his claims for relief by a preponderance of the evidence. *Harned v. Henderson*, 588 F.2d 12, 22 (2d Cir. 1978). The motion and record of this case conclusively show that the defendant is not entitled to the relief he seeks and a hearing on his motion is not required. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) ("Trial counsel's detailed description of events was eminently credible. And [the judge] having tried the case, was intimately familiar with the trial proceedings and the events and circumstances surrounding them. It was within the court's discretion to determine that more was not needed.").

A moment's thought to what has been written thus far might obscure the fact that this is a motion claiming the relief § 2255 would provide if, indeed, defense counsel provided ineffective assistance. It has all the hallmarks of a review of motions made pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure or the outlines of an appellate brief. The disposition of this motion could have been readily accomplished by obeying the teachings of *Strickland v. Washington*, 466 U.S. 668 (1984) which, in related formulations, provided the relevant deciding guides, *viz*.: the defendant must show that counsel's representation fell below an objective

standard of reasonableness; was counsel's assistance reasonable considering all the circumstances; the proper measure of attorney performance remains simply reasonableness under prevailing professional norms; judicial scrutiny of counsel's performance must be highly deferential; a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment; the deficiencies in counsel's performance must be prejudicial to the defense to be ineffective assistance under the Constitution. *See id.* at 688-92. The recitation of any two or more of those guides would have sufficed to declare that the defendant's motion must be and it is hereby, **DENIED**.

      That perfunctory disposition would in this case, be wanting. This defendant is a disbarred lawyer, whose guilt of the serious crime he committed was proved beyond a reasonable doubt by evidence which was damning. That evidence is blatantly distorted and shamelessly re-written in his 13-page § 2255 submission, DE 204, his 56-page Memorandum in support of it, DE 204-1, and his 49-page response, DE 234, to the government's opposition to his motion which addresses every complaint of ineffectiveness by a surgical dissection of the trial transcript, referencing every page and every line of which stamps every complaint misleading at best and false at its worst. To have decided this motion by rewording the Government's Opposition Memorandum, DE 223, would have been a poorly disguised exercise in plagiarism, and so I adopt it and incorporate it here by reference.

      The egregiousness of Macaluso's submissions is magnified by his defamatory, gratuitous, disparagement of his attorneys, appointed at government expense to represent him. The first

attorney, Murray Singer, an experienced, well regarded criminal defense lawyer and a member for some time of this Court's CJA Panel, discharged his professional responsibility to the defendant competently and conscientiously for approximately ten months until the defendant requested his dismissal "for gross incompetence and failure to adequately investigate and prepare a defense." DE 204-1 at 10. The record establishes those slurs as unwarranted and evil.

Michael Gold, who was appointed to replace Singer and represented Macaluso throughout the pre-trial proceedings and at trial, is a former Assistant United States Attorney, a respected criminal defense lawyer in private practice for approximately 25 years and an innate professional bearing in the courtroom. His defense of Macaluso at trial given the persuasive evidence against him was the work of a competent lawyer. It was therefore startling to read Macaluso's charge that "he failed to comprehend the relevant law," and that he "did not understand the law surrounding conspiracy." DE 204-1 at 21.

*Strickland*, as of this writing, has been cited 333,430 times, 189,877 of which were in other cases of which this one is surely not atypical. I would tend to believe that in most, *Strickland* is cited when one or more of its guides is enlisted to resolve a claim of counsel ineffectiveness. Although I have not researched the point, I would venture to assume that cited less frequently is an insightful observation by Justice O'Connor in which interesting questions lurk concerning this claimed constitutional violation of effective assistance of counsel. She wrote, at 690:

> The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a

9

>second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

That observation could have been written with this case in mind.

A cursory review of docket entries 170-235 will quickly reveal that his submissions are overwhelmingly frivolous and meritless and can only be attributed to hubris. They burden the Court which is authorized to prevent access to it which is vexatious and disruptive. The defendant is hereby advised that his continued baseless, intrusive litigating practices will result in enjoining him from filing any further paper in this case.

For all of the foregoing reasons, the defendant's motions are **DENIED**. There being not the slightest showing of a denial let alone a substantial one of a constitutional right, a certificate of appealability will be denied. 28 U.S.C. § 2253(c).

SO ORDERED.

Dated:   Brooklyn, New York
         April 30, 2020                             /s/_____
                                                    I. Leo Glasser
                                                    Senior United States District Judge

10